IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of Zetwerk India Manufacturing Businesses Private Limited pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | ) ) ) Case No. _____ ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY
FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

Dated: May 7, 2025

BAKER & HOSTETLER LLP
Jeffrey J. Lyons (#6437)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jjlyons@bakerlaw.com

*Attorneys for Zetwerk India Manufacturing Businesses Private Limited*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................1

     A.      Edla Promises to Protect Zetwerk's Confidential Information .............................3

     B.      Edla Steals Zetwerk's Confidential Information ...................................................5

     C.      Discovery Sought ..................................................................................................7

III.    ARGUMENT .........................................................................................................8

     A.      Petitioner Satisfies the Statutory Requirements of 28 U.S.C. § 1782 ...................9

     B.      The Discretionary Factors Weigh in Favor of Granting the Application .............10

IV.     CONCLUSION ....................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Batbold*,
  2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021) ...........................................................................12

*In re CI Invs. Inc.*,
  2023 WL 8643965 (S.D.N.Y. Dec. 14, 2023) .........................................................................12

*In re Eshelman*,
  2023 WL 3361192 (N.D. Cal. May 9, 2023) ..........................................................................12

*In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782
  Granting Leave to Obtain Discovery for Use in Foreign Proc.*,
  2021 WL 1063390 (D. Del. Mar. 19, 2021) ...........................................................................11

*In re Ex Parte Application of Porsche Automobil Holding SE*,
  2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ...........................................................................11

*In re FourWorld Cap. Mgmt. LLC*,
  2024 WL 1637400 (D. Del. Apr. 16, 2024) ...........................................................9, 11, 12, 13

*In re O'Keefee*,
  646 F. App'x 263 (3d Cir. 2016) ............................................................................................12

*In re Selman*,
  2024 WL 1092025 (D. Del. Mar. 13, 2024) .............................................................................9

*In re Servicio Pan Americano de Proteccion*,
  354 F. Supp. 2d 269 (S.D.N.Y. 2004) ....................................................................................12

*In re Upheath Holdings, Inc.*,
  2024 WL 4203228 (S.D.N.Y. Sept. 16, 2024) ........................................................................12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ..........................................................................................................10, 11

*Kulzer v. Esschem, Inc.*,
  390 F. App'x 88 (3d Cir. 2010) ..........................................................................................9, 11

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
  376 F.3d 79 (2d Cir. 2004) .....................................................................................................10

**Statutes**

28 U.S.C. § 1782 ............................................................................................................. *passim*

Zetwerk India Manufacturing Businesses Private Limited ("**Petitioner**"), a company incorporated under the Indian Companies Act 2013 and having its registered office at No. 461, Oriental Towers, 17th Cross, 4th Sector, 1st Floor, HSR Layout, Bangalore-560 103, Karnataka, India, respectfully submits this memorandum of law in support of its application for an order, pursuant to 28 U.S.C. § 1782, to conduct discovery for use in aid of a foreign proceeding.

## I.    INTRODUCTION

Petitioner files this application in support of an action filed on April 23, 2025 by Petitioner before the Court of the Additional City Civil and Sessions Judge at Bengalaru (the "**Indian Proceedings**") against a former employee, Mr. Anirud Reddy Edla ("**Edla**"), whom Petitioner alleges has misappropriated, misused, and unlawfully disseminated Petitioner's proprietary and confidential material, including but not limited to trade secrets and business strategies for his own personal benefit and for the benefit of certain third parties. This has allowed Petitioner's competitors to engage in unfair competition, tortious interference with Petitioner's business, diversion of business opportunities, and unjustly enriched Edla at Petitioner's expense. The discovery sought here seeks to identify the scope of the theft and materials that Petitioner may have provided to the target of the discovery sought here, Ayr Energy, Inc. ("**Ayr Energy**"), a Delaware Corporation.

## II.    FACTUAL BACKGROUND

Zetwerk is an Indian company located in Bangalore, India that provides end-to-end manufacturing and supply chain solutions to companies worldwide. *See* Declaration of John Tharian Thaliath ("Decl.") ¶ 2. Since its incorporation in 2018, Zetwerk has significantly expanded its operations across multiple industries, including energy, infrastructure, aerospace, and heavy engineering, and has established itself as a key player in global industrial manufacturing sector through its continued focus on innovation, quality, and cost-effective solutions. *Id.* Zetwerk

manufactures products through its own facilities but also uses subcontractors and other suppliers. *Id.* In 2024, Zetwerk completed a funding raise that, "post-money," valued the business at nearly US $3 billion. *Id.* ¶ 3. Zetwerk's annual revenue for the fiscal year ending March 31, 2024, was approximately US $1.75 billion. *Id.*

This growth has been further driven by, among other things: (a) fostering strategic partnerships with suppliers in India and key international locations and positioning itself as a reliable partner for manufacturers worldwide—through extensive negotiations; (b) providing cost-effective, high-quality, and customized solutions by optimizing pricing models and financial strategies, developed through years of market research and operational refinement, to ensure cost efficiency and profitability; (c) conducting confidential market research and expansion strategies, including geographic assessments, competitor analyses, and business development plans, which are critical to sustained growth; and (d) deploying targeted marketing strategies and brand positioning initiatives to strengthen market penetration and customer engagement. *Id.* ¶ 4. Zetwerk's growth and market position are a direct result of its proprietary and confidential business strategies, developed through substantial financial, technological, and human capital investments. *Id.* ¶ 5. This includes, but is not limited to, internal research and development data, pricing strategies, supplier and customer lists, financial models, manufacturing techniques, and strategic business plans. *Id.* These assets are critical to Zetwerk's competitive advantage, and any unauthorized disclosure or misuse would allow competitors to replicate our strategies, undercut our pricing, and disrupt established supplier and customer relationships, causing severe and irreparable harm to Zetwerk's market position, operational stability, and financial interests. *Id.*

As a result, Zetwerk has implemented comprehensive confidentiality safeguards, including stringent internal policies. *Id.* ¶ 6. In addition, Zetwerk has also incorporated explicit

confidentiality clauses in all employment agreements and offer letters, which require its employees to maintain the strictest confidentiality regarding all documents, records, and information related to Zetwerk's business operations, including supplier lists, financial and technical data, vendor relationships, business forecasts, and strategic opportunities. *Id.* The employment agreements and offer letters also prohibit its employees from misusing the Zetwerk's confidential information, and also restrain them from disclosing such information to third parties. *Id.*

### A.    <u>Edla Promises to Protect Zetwerk's Confidential Information</u>

On March 1, 2019, Edla began working for Zetwerk as "Director – Strategic Initiatives," a position he remained in until January 9, 2023. *Id.* ¶ 7. Per the terms of Edla's appointment letter (and addendum thereto) (the "**Appointment Letter**"), he was contractually bound to maintain the highest degree of confidentiality concerning Zetwerk's business operations. *Id.* In particular, the Appointment Letter stated, in relevant part:

> Clause 10 (Confidentiality)
>
> You must always maintain the highest degree of confidentiality and keep as confidential the records and documents and other confidential information relating to the business of the Company, which includes, without limitation any procurement requirements, purchasing, manufacturing, customer lists, financial and technical data, vendors, vendor lists, business forecasts and opportunities, sales and merchandising, marketing plans and information regarding the business or operations of the Company or its clients, which may be known to you or confided in you by any means and you will use such information only in a duly authorized manner in the interest of the Company. You shall comply with all of the Company's instructions for preserving its confidentiality and use confidential information only in furtherance of the Company's business. You further declare that you shall not use the confidential information for your use and personal gain or disclose the same to any third party.

*Id.* Additionally, given his designation and role in Zetwerk, Edla was also bound by fiduciary obligations that heightened the duty of care owed to Zetwerk and required him to act in the best interest of Zetwerk (by protecting and preserving confidential information), and to refrain from

misusing, transferring, or disclosing it—whether during the course of his employment or after his resignation—for any unauthorized purpose, amongst other things. *Id.* ¶ 8.

Edla, in his position, was entrusted with significant responsibilities critical to the Zetwerk's business operations, such as identifying and evaluating growth opportunities, overseeing procurement strategies, managing vendor and customer relationships, and formulating strategic business plans, *inter alia* for its energy-related products and solutions (including, transporters, switchgear and breakers). *Id.* ¶ 9. In the discharge of these duties, Edla was granted unrestricted access to Zetwerk's highly sensitive confidential information, including trade secrets and technical know-how, pricing lists, customer and supplier data, which has been systematically compiled and refined by Zetwerk—over the years—through substantial financial, technological, and human capital investments. *Id.* ¶ 10. Such access was given to Edla strictly within the scope of his employment and under the conditions of confidentiality outlined in the Appointment Letter. *Id.*

On December 26, 2022, Edla executed an employment letter (the "**U.S. Employment Letter**") with Zetwerk's U.S. subsidiary, Zetwerk Manufacturing USA, Inc. ("**Zetwerk U.S.**"). *Id.* ¶ 11. Edla officially transitioned to that role on January 10, 2023, and remained with the company until February 2025. *Id.* He was appointed Business Head of Zetwerk U.S. *Id.* In that role, Edla was entrusted with substantial responsibilities, including identifying opportunities for growth, managing procurement, handling vendor and customer relationships, and developing business strategies. *Id.* The decision to transition Edla to Zetwerk U.S. was based entirely on the trust and confidence placed in him because to his seniority within Zetwerk's organization, and with the expectation that Edla would continue to act in the best interests of Edla and uphold the highest standards of integrity in the performance of his duties. *Id.* ¶ 12. As part of his relocation, Zetwerk U.S. even sponsored his application for permanent residency (green card), which also

clearly demonstrates the trust in Edla and Zetwerk's intent to retain him long-term its corporate family.  *Id.*

Per the terms of the U.S. Employment Letter, Edla was explicitly obligated to maintain strict non-disclosure of its Zetwerk U.S.'s proprietary information (or confidential information concerning the business and operations of Zetwerk U.S.).  *Id.* ¶ 13.  He was also prohibited from engaging in any employment, occupation, consulting, or business activities related to the Zetwerk's business, or any future business Zetwerk might enter.  *Id.*  Additionally, Edla was restricted from participating in any activities that could conflict with his obligations to Zetwerk U.S., including the protection of its confidential information. *Id.*

**B.**    **Edla Steals Zetwerk's Confidential Information**

In or around February 2025, Zetwerk learned from one of its suppliers that Edla (sometime in 2024) approached that supplier on behalf of Ayr Energy, to procure the services of the supplier for Ayr Energy.  *Id.* ¶ 14; *see also id.* ¶ 14 & Ex. 1 (printout of the Delaware Secretary of State website referencing "Ayr Energy, Inc.").  At that time, Edla was undoubtedly aware that Zetwerk procured materials through a meticulously cultivated network of suppliers at negotiated costs, secured through long-standing business relationships built over the years.  *Id.* ¶ 15.  Despite this knowledge, Edla exploited Zetwerk's confidential information, including supplier lists, to further his own unlawful interests by securing materials and services, possibly at the same negotiated rates extended to Zetwerk.  *Id.*  Edla, who had no independent access to such data outside of his employment relationship with Zetwerk companies, could not have obtained this information but for his employment with Zetwerk.  *Id.*

In 2024 and 2025, Zetwerk was seeking to acquire a power-components manufacturing company (the "**Power Components Company**"), which is engaged in the business of supply of transformer raw materials, specifically CRGO laminations and tanks.  *Id.* ¶ 16.  Zetwerk had been

5

negotiating with the Power Components Company for an extended period and in this regard, had conducted extensive due diligence, market analysis, and financial assessments—deploying significant resources and strategic planning into this potential acquisition. *Id.* Edla, by virtue of his prior employment with the Zetwerk entities, was privy to this highly confidential information. *Id.*

Not coincidentally, Zetwerk—sometime in February 2025, which is when Edla stopped working for Zetwerk U.S.—learned that Edla, through Ayr Energy, was also targeting the Power Components Company for an acquisition. *Id.* ¶ 17. Then, on March 10, 2025, Edla sent an email to Zetwerk using his Ayr Energy email (anirudh@ayr.energy) and proposed a strategic purchase of the Power Components Company. In this email, Edla suggested that Zetwerk could participate in a financing round and claimed that "*the market is incredibly large and both of us are just getting started in the sector.*" *Id.* ¶ 18. Although the Power Components Company's existence was publicly known, critical details such as the timing, valuation, due diligence findings, and Zetwerk's strategic interest in acquiring the Power Components Company constituted highly confidential business intelligence. *Id.* ¶ 19. This confidential information was accessible to Edla solely through his prior association with the Zetwerk entities, and in the absence of such association, he had no independent means of gaining access to that information. *Id.* However, Edla used that information to further the business objectives of Ayr Energy. *Id.*

As a result of this conduct, Zetwerk undertook a forensic investigation into Edla's systems, from the period of September 2024 (when Ayr Energy was incorporated) through March 2025. *Id.* ¶ 20. The investigation showed that Edla deliberately deleted approximately 800 emails from his server right before his departure from employment at the various Zetwerk entities. *Id.* On the same day as the deletion, Edla downloaded over 250 files from the Zetwerk company server.

Zetwerk is thus conducting an even more extensive forensic investigation to determine the full scope and extent of Edla's wrongdoing.  *Id.*

### C.    <u>Discovery Sought</u>

Zetwerk has thus brought suit against Edla in court in India, in a case titled *Zetwerk India Manufacturing Businesses Private Limited v. Anirudh Reddy Edla and Zetwerk Manufacturing USA Inc.*[1]  *Id.* ¶ 21; *see also id.* ¶ 23 & Ex. 2 (copy of Indian lawsuit filed by Zetwerk).  Zetwerk has brought claims against Edla for tortious misappropriation, breach of contract, breach of fiduciary duty, unlawful interference with business relationships, and tortious misrepresentation. *Id.* ¶ 21.  Zetwerk is seeking an injunction barring Edla and those acting on his behalf from using Zetwerk's confidential information and to appoint a receiver to seize Zetwerk's confidential information back from Edla.  Zetwerk also seeks damages, including lost profits.  *Id.* ¶ 22.

Zetwerk seeks the following categories of documents through this Section 1782 Application:

1.    All communications with Edla prior to the date he was hired by You and/or associated with You.

2.    All non-privileged documents relating to the Power Components Company, including all communications with the Power Components Company.

3.    All non-privileged documents relating to Zetwerk, its subsidiaries, related entities (excluding any direct communications with Zetwerk).

4.    All documents Edla provided to You.

---

1    Under Indian law, a "proper party" is one against whom no relief is necessarily sought, but whose presence is required for the complete and effective adjudication of the matter.  Zetwerk U.S. has been added as a proper party to the Indian proceedings because Edla's misappropriation of Zetwerk India's confidential information occurred during his employment with Zetwerk U.S. Although Zetwerk U.S. has neither suffered any harm (to qualify as a plaintiff) nor caused any harm (to be treated as a necessary party in the conventional sense), its presence is nonetheless indispensable for the complete and effective adjudication of the dispute.  Accordingly, it has been joined as a proforma defendant.

5.      All agreements, including but not limited to employment agreements, You have executed with Edla, including any addenda, annexes, exhibits, or other similar documents pertaining to the terms and conditions of Edla's employment with You.

6.      All communications between you and Zetwerk's supplier relating to the negotiation of any agreement, pricing, or other business relationship, including (but not limited to) all executed agreements and purchase orders with these supplier.

7.      All internal communications relating to Edla, including but not limited to Your rationale for hiring Edla.

*See id.* ¶ 24 & Ex. B.

As detailed in the Declaration of John Tharian Thaliath, Zetwerk seeks these documents to obtain information Edla provided to Ayr Energy; what information Ayr Energy and Edla were using in its negotiations with and discussions about the Power Components Company; how Ayr Energy would have used information received from Edla; precisely what materials Edla provided to Ayr Energy; whether Edla was being compensated for transmitting Zetwerk's proprietary and confidential information and other aspects of Edla's new employment relationship/ association that could relate to Zetwerk and its business, customers, and strategies (among other things); whether Ayr Energy and Edla were using pricing and other information regarding Zetwerk (including whether Ayr Energy and/or Edla were masquerading as Zetwerk affiliates) to obtain preferential pricing or any other undue benefits from Zetwerk's supplier; and whether Edla was trading on Zetwerk's confidential information and what Edla had promised Ayr Energy if he was hired.  *See id.* ¶¶ 24-30.

## III.    ARGUMENT

Section 1782 of Title 28 of the United States Code permits the United States District Courts to grant discovery for use in a foreign proceeding.  The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or

> international tribunal…The order may be made…upon the
> application of any interested person…

28 U.S.C. § 1782(a).  The goals of this statute are twofold:  to "provid[e] efficient means of

assistance to participants in international litigation in our federal courts and encourage[e] foreign

countries by example to provide similar means of assistance to our courts."  *In re FourWorld Cap.*

*Mgmt. LLC*, 2024 WL 1637400, at *8 (D. Del. Apr. 16, 2024) (cleaned up).

When a court finds that the statutory requirements of Section 1782 are met, it may, in its

discretion, grant the application for discovery.  The United States Supreme Court has articulated a

number of factors the district courts, in exercising their discretion, should consider when weighing

an application under Section 1782.  As set forth in greater detail below, all these discretionary

factors weigh in favor of granting Petitioner the requested discovery.

### A.    Petitioner Satisfies the Statutory Requirements of 28 U.S.C. § 1782

Courts are authorized to grant an application made pursuant to 28 U.S.C. § 1782 where

three requirements are met:  (1) the person from whom discovery is sought must reside in the

district; (2) the discovery must be for use in proceedings before a foreign tribunal; and (3) the

application can be made by either the foreign tribunal or by an interested party.  *See Kulzer v.*

*Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010).  Petitioner's application satisfies all three

statutory requirements.

**First**, the third party from which Petitioner intends to procure discovery resides in or is

found in this District.  Specifically, Ayr Energy is incorporated in this District.  *See* Decl. ¶ 14 &

Ex. 1.  Therefore, the entity to be subpoenaed resides and/or can be found in the District of

Delaware within the meaning of the statute.  Thus, the petition thus meets the first statutory

requirement.

**Second**, the discovery sought is for use in proceedings currently pending before a foreign tribunal. The regularly constituted courts of India are foreign tribunals within the meaning of the statute. Petitioner's intent to use the discovery sought in the Indian Proceeding satisfies the "for use" requirement of Section 1782. The statute's requirement is the obtaining of evidence "for use" in a foreign proceeding. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004); *see also In re Selman,* 2024 WL 1092025 at * 3 (D. Del. Mar. 13, 2024) ("In order to demonstrate that the material at issue will be 'for use' in the foreign proceeding, a petitioner must meet only a 'low threshold'—that is it must simply demonstrate that 'the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." (cleaned up)).

**Third**, Petitioner is an "interested person" authorized to bring this application because it is the plaintiff in the Indian proceeding. The statutory term "interested person" includes parties to the foreign litigation. *See Intel*, 542 U.S. at 256.

For these reasons, Petitioner meets the three statutory requirements of Section 1782.

## B. The Discretionary Factors Weigh in Favor of Granting the Application

"Once the statutory requirements [Section 1782] are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004) (cleaned up). The Supreme Court has identified four factors that the district courts are to consider in ruling on a Section 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or

burdensome. *See Intel*, 542 U.S. at 264–65; *Kulzer*, 390 F. App'x at 91. Here, all of these discretionary factors weigh in favor of granting Petitioner's application.

First, where, as here, discovery is sought from an entity that would not participate in the contemplated Foreign Proceedings, the need for court-ordered discovery is apparent. As the Supreme Court explained, "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 264 (cleaned up). Ayr Energy is not a party to the Foreign Proceedings.

The second discretionary factor identified by the Supreme Court is the nature of the foreign proceedings and the receptivity of the foreign tribunal to federal court assistance. *Id.* In considering this factor, "§ 1782 does not authorize a district court to substitute its own assessment of admissibility or discoverability for that of a foreign tribunal." *In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, 2021 WL 1063390, at *4 (D. Del. Mar. 19, 2021). Courts should rather "heed only clear statements by foreign tribunals that they would reject Section 1782 assistance." *In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) (cleaned up). The party opposing the petition must demonstrate that a foreign court would not be receptive to U.S. court assistance. *In re FourWorld Cap. Mgmt. LLC*, 2024 WL 1637400, at *8.

Indian courts are affirmatively receptive to evidence obtained with the aid of other countries. India is a signatory to and has ratified of the Hague Convention on the Taking of

Evidence Abroad in Civil or Commercial Matters.[2]  Courts have determined that a country's foreign tribunals are receptive to evidence obtained abroad where they are parties to the Hague Convention on Evidence.  *See In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016) (finding so with regard to Hong Kong); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (same regarding Venezuela).  Federal district courts have granted petitions in support of proceedings before courts in India.  *See, e.g.*, *In re Upheath Holdings, Inc.*, 2024 WL 4203228, at *1 (S.D.N.Y. Sept. 16, 2024); *see generally In re Eshelman*, 2023 WL 3361192 (N.D. Cal. May 9, 2023).

The third factor—whether the application is an attempt to circumvent any foreign proof-gathering restrictions—also weighs in favor of granting discovery.  This factor does not require the applicant to have first sought the requested discovery in the foreign tribunal—"courts may grant Section 1782 applications even where the applicant did not first seek discovery in the foreign tribunal…or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding." *In re CI Invs. Inc.*, 2023 WL 8643965, at *5 (S.D.N.Y. Dec. 14, 2023) (cleaned up).  Rather, "a court's analysis of this factor hinges on whether a petitioner is pursuing discovery in bad faith." *In re Batbold*, 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021), *aff'd*, 2023 WL 2088524 (S.D.N.Y. Feb. 17, 2023).  As noted above, Petitioner has no means to seek this discovery in India as against Ayr Energy because it not a party to the Indian Proceeding.  *See* Decl. ¶ 21 & Ex. 2.

Finally, this application is not burdensome, and the discovery Petitioner seeks is relevant and proportional to the needs of the case.  *See In re FourWorld Cap. Mgmt. LLC*, 2024 WL

---

[2]  *See* Hague Conference on Private International Law, India Member Page, https://www.hcch.net/en/instruments/conventions/status-table/acceptances/?mid=988 (last visited May 7, 2025).

1637400, at *9. Ayr Energy is a sophisticated entity with multi-national reach that will almost certainly have document management and retention policies in place. The subpoena seeks relevant communications that are limited to a single-issue case and there are likely few employees with the responsive information in their email accounts. Producing documents responsive to the subpoena will be straightforward and minimally burdensome.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court endorse the Proposed Order annexed to the Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings as Exhibit A, to grant leave to Petitioner to serve the subpoena attached to that Application as Exhibit B on Ayr Energy.

Dated: May 7, 2025

BAKER & HOSTETLER LLP

*/s/  Jeffrey J. Lyons*
Jeffrey J. Lyons (#6437)
1201 North Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jjlyons@bakerlaw.com

*Counsel for Zetwerk India Manufacturing Businesses Private Limited*