# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: APPLICATION OF ZETWERK INDIA MANUFACTURING BUSINESSES PRIVATE LIMITED PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | ) ) ) ) ) ) C.A. No. 25-567-JLH-SRF |

## MEMORANDUM ORDER

At Wilmington this 13th day of **August, 2025**, the court having considered the papers submitted and the arguments presented during the June 30, 2025 teleconference regarding the application of petitioner Zetwerk India Manufacturing Businesses Private Limited ("Zetwerk") for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in a foreign proceeding (the "Application"), (D.I. 1; *see also* D.I. 3, D.I. 4, D.I. 15, D.I. 17, D.I. 18, D.I. 19, D.I. 20, D.I. 21, D.I. 27), IT IS ORDERED that the Application is DENIED without prejudice for the following reasons:

   **1. Background.** On April 23, 2025, Zetwerk filed an action against Anirudh Reddy Edla ("Edla"), a former Zetwerk employee, and Zetwerk Manufacturing USA, Inc. ("Zetwerk U.S."), Zetwerk's U.S. subsidiary, in the Court of the Additional City Civil and Sessions Judge at Bengalaru in a case captioned *Zetwerk India Manufacturing Businesses Private Limited v. Anirudh Reddy Edla and Zetwerk Manufacturing U.S.A. Inc.* (the "Indian Proceeding"). (D.I. 3 at 1, 7) In the Indian Proceeding, Zetwerk alleges that Edla misappropriated, misused, and unlawfully disseminated Zetwerk's proprietary and confidential material, including but not limited to trade secrets and business strategies, for his own personal benefit and for the benefit of certain third parties. (*Id.* at 1) Zetwerk represents it is not asserting a cause of action against Zetwerk U.S. in the Indian Proceeding, but it included its subsidiary in the suit as an

indispensable party required for a complete adjudication because Edla's misappropriation of Zetwerk's confidential information occurred during his employment with Zetwerk U.S. (*Id.* at 7 n.1)

2. Zetwerk is an Indian company "that provides end-to-end manufacturing and supply chain solutions to companies worldwide." (D.I. 1 at 2) Edla worked for Zetwerk as a "Director—Strategic Initiatives," from March 1, 2019 to January 9, 2023. (*Id.* at 3) Edla's employment agreement included a confidentiality provision that required him to maintain the confidentiality of Zetwerk's proprietary information. (*Id.*) In December of 2022,[1] Edla agreed to become "Business Head" of Zetwerk U.S. by executing an employment letter that obligated him to maintain the confidentiality of Zetwerk U.S.'s proprietary information. (*Id.* at 4) Edla left Zetwerk U.S. in February of 2025 to work for respondent Ayr Energy, Inc. ("Ayr").

3. After Edla left Zetwerk U.S. in February of 2025, Zetwerk learned of two instances of Edla allegedly misappropriating Zetwerk's proprietary and confidential information, in breach of his agreements and fiduciary duties. The first instance occurred in 2024, when Edla approached one of Zetwerk's suppliers to conduct business on behalf of Ayr. (*Id.* at 5) Zetwerk further discovered that in February of 2025, Edla acted on behalf of Ayr to target the same power components manufacturing company that Zetwerk was seeking to acquire. (*Id.*) Zetwerk contends that Edla could only have known about its supplier and acquisition target through his access to Zetwerk's confidential proprietary information. (*Id.* at 5-6)

4. After learning of Edla's activities, Zetwerk conducted a forensic investigation into Edla's systems for the period covering September of 2024 (when Ayr was incorporated) through March of 2025. (*Id.* at 6) The investigation revealed that, prior to his departure from Zetwerk

---

[1] Edla officially assumed his role at Zetwerk U.S. on January 10, 2023, after his employment with Zetwerk ended. (D.I. 1 at 4)

2

and Zetwerk U.S., Edla deleted approximately 800 emails from his server and downloaded over 250 files from the Zetwerk company server. (*Id.*)

5. Zetwerk filed this Application on May 7, 2025, seeking the production of seven categories of documents from Ayr, a non-party to the Indian Proceeding. (*Id.* at 6-7) The matter was referred to the undersigned Magistrate Judge on May 16, 2025. (D.I. 7) Following oral argument, the court instructed the parties to meet and confer to narrow the scope of Zetwerk's document requests and potentially reach a resolution. (D.I. 26) The parties' efforts were unsuccessful, but Zetwerk submitted a revised set of the seven categories of documents it seeks to compel for use in the Indian Proceeding as follows:

> (1) All communications with Edla from the date that either You first approached Edla for potential engagement or association (whether as an employee, consultant, advisor, or in any other capacity) or that Edla first approached Ayr Energy for such engagement or association, until the date that he was formally engaged by You that contain a solicitation for, or discuss, Zetwerk Confidential Information;
>
> (2) All documents relating to KRYFS Power Components Limited that were created using Zetwerk Confidential Information or that contain or reference Zetwerk Confidential Information;
>
> (3) All documents Edla provided to you that contain or reference Zetwerk Confidential Information;
>
> (4) A copy of Mr. Edla's employment agreement, and any other agreement between You and Edla that references or contains Zetwerk Confidential Information;
>
> (5) All internal communications relating to Edla that relate to the acquisition, solicitation or use of Zetwerk Confidential Information;
>
> (6) To the extent such documents are not captured by Requests 3, 4, and 5, all non-privileged documents relating to Zetwerk, its subsidiaries, or related entities, that contain or reference Zetwerk Confidential Information. For the avoidance of doubt, in the event that no responsive documents exist in response to Request Nos. 3-5, above, Respondent shall not need to undertake a search under this request No. 6;
>
> (7) All communications, including any agreements, between You and any Zetwerk suppliers, vendors, or service providers that were identified, introduced, referred, facilitated, or otherwise connected to Ayr Energy by or through Edla. The list of Zetwerk suppliers, vendors, and service providers to be searched by Ayr Energy

3

> shall be provided on an "Outside Counsel's Eyes Only" basis to facilitate this search, with the understanding that said list can be shared with a discovery service provider but shall under no circumstances be shared with Ayr Energy. For the avoidance of doubt, in the event that no responsive documents exist in response to Request Nos. 3-5, above, Respondent shall not be required to undertake a search under this request No. 7. [PETITIONER IS WILLING TO AGREE TO A PROTECTIVE ORDER TO PROTECT THE CONFIDENTIALITY OF THESE DOCUMENTS AND TO AGREE TO REDACTIONS OF AYR ENERGY CONFIDENTIAL INFORMATION CONTAINED IN ANY SUCH AGREEMENT].

(D.I. 27-4, Ex. 4 at 2–3)

      **6. Legal standard.** Section 1782 of Title 28 provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made ... upon the application of any interested person[.]" 28 U.S.C. § 1782(a). The aim of the statute is to "facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect." *In re Bayer AG*, 146 F.3d 188, 191–92 (3d Cir. 1998).

      **7.** The court follows a two-step process to determine whether to grant judicial assistance under 28 U.S.C. § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). First, the court analyzes whether the statutory conditions of Section 1782 are satisfied: "(1) the person from whom the discovery sought 'resides or is found' within the district; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal;' and (3) the application is made by an 'interested person.' " *SPS Corp I, Fundo de Investimento em Direitos Creditórios Não Padronizados v. Gen. Motors Co.*, 110 F.4th 586, 590-91 (3d Cir. 2024) (quoting 28 U.S.C. § 1782(a)).

4

8. Next, the court determines in its discretion whether the requested discovery should be allowed under the four factors identified by the Supreme Court in *Intel*:

> (1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; [and] (4) whether the subpoena contains unduly intrusive or burdensome requests.

*In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016) (citing *Intel*, 542 U.S. at 264–65). "*Intel* does not mandate that every factor support a court's exercise of discretion or that all factors need even be considered. Rather, it provided the factors to illuminate considerations relevant to the decision of whether to authorize assistance for use in proceedings before a foreign tribunal." *In re Eli Lilly & Co.*, 37 F.4th 160, 168 (4th Cir. 2022). The party opposing the discovery has the burden of demonstrating any facts warranting denial of the Application. *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011).

9. **Analysis.** Ayr contends that Zetwerk's Application and the proposed revised requests do not satisfy the statutory "for use" requirement, and the discretionary *Intel* factors weigh against granting the Application. (D.I. 17; D.I. 27) For the reasons set forth below, the court concludes that Zetwerk meets the low threshold required to show the requested discovery will serve some use in the Indian Proceeding. However, the discretionary *Intel* factors weigh against granting the Application. Therefore, the Application is DENIED without prejudice.

10. *The "For Use" Statutory Requirement.* Ayr does not challenge Zetwerk's satisfaction of the first and third statutory requirements. However, Ayr contends that the second "for use" requirement is not satisfied. (D.I. 17 at 1) "[T]o demonstrate that the material at issue will be 'for use' in the foreign proceeding, a petitioner must meet only a 'low threshold'—that is,

5

it must simply demonstrate that 'the evidence sought is something that will be employed with some advantage or serve some use in the proceeding.'" *In re Selman*, C.A. No. 23-895-CJB, 2024 WL 1092025, at *3 (D. Del. Mar. 13, 2024) (quoting *In re Ex Parte Application of Eni S.p.A.*, C.A. No. 20-mc-334-MN, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021)). "The key question, therefore, is not simply whether the information sought is relevant, but whether the [petitioner] will actually be able to use the information in the [foreign] proceeding." *Id.* (quoting *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (internal quotation marks omitted)).

**11.** Ayr contends that the discovery requests amount to a fishing expedition by Zetwerk to determine if litigation against Ayr is viable. (D.I. 17 at 1) In support of its position, Ayr compares Zetwerk's Application to the petitioner's discovery requests in *In re Nokia Technologies Oy*, which sought discovery for an existing patent infringement action involving claims directed to decoding video content, as well as anticipated infringement actions on patent claims directed to encoding video content. C.A. No. 23-1395-GBW, 2024 WL 1675025, at *1 (D. Del. Apr. 18, 2024). The court determined that the discovery requests directed to the non-accused encoding claims amounted to a fishing expedition and did not satisfy the "for use" standard in a case alleging infringement of only the decoding claims. *Id.* at *3 ("[T]he court is concerned that Nokia is using its § 1782 petition as a fishing expedition to determine if it should pursue litigation" on the encoding claims against the respondent).

**12.** *Nokia* is not entirely supportive of Ayr's argument because the court found that the discovery requests regarding the asserted decoding patent claims were the subject of the foreign proceeding and therefore satisfied the "for use" standard, even though the requests seeking discovery on the non-asserted encoding claims did not. *Id.* Similarly, the discovery sought by Zetwerk is "for use" in the Indian Proceeding because it is targeted to the confidential

information Edla allegedly provided to Ayr. Moreover, to dispel Ayr's concerns about Zetwerk's use of the discovery to assert claims against Ayr, Zetwerk represents that it is willing to execute a protective order restricting it from using Ayr's production against Ayr in the Indian Proceeding or in any other proceeding. (D.I. 27 at 1) The court finds that Zetwerk has satisfied its *de minimis* burden of showing that the documents "will be employed with some advantage or serve some use in the proceeding." *In re Selman*, 2024 WL 1092025, at *3, 6. Therefore, Zetwerk's Application should not be denied on this ground.

**13. *Intel Factor 1.*** The court finds, on balance, the discretionary *Intel* factors weigh against granting the Application. "The first *Intel* factor considers whether 'the person from whom discovery is sought is a participant in the foreign proceeding[.]' " *In re Selman*, 2024 WL 1092025, at *6 (quoting *Intel Corp.*, 542 U.S. at 264). If so, the need for relief under Section 1782 is not as apparent because the foreign tribunal can generally order the party appearing before it to produce the evidence. *Id.*

**14.** It is undisputed that Ayr is not a party to the Indian Proceeding. Nonetheless, Ayr argues that Edla is the real party in interest, therefore, the material sought should be discoverable from him. (D.I. 17 at 2; D.I. 27 at 6) Zetwerk responds that Edla may no longer have possession of Zetwerk's confidential information because he deleted hundreds of files after sharing the information with Ayr. As a result, Zetwerk maintains that the discovery is likely to be solely in Ayr's possession. (D.I. 19 at 2; D.I. 27 at 1)

**15.** The court finds that the first *Intel* factor weighs slightly against Zetwerk. Although Ayr's status as a non-party to the Indian Proceeding weighs in favor of Zetwerk, Zetwerk alludes to the fact that Edla also has the materials: "The discovery sought here seeks to identify the scope of the theft and materials that [Edla] may have provided to the target of the discovery sought here, Ayr Energy, Inc." (D.I. 3 at 1) There is no dispute that Edla is a party to the Indian

Proceeding, and the revised discovery requests demonstrate that the information sought by Zetwerk is likely to be in Edla's possession. (D.I. 27, Ex. 4) To the extent that Zetwerk can obtain the same information in the Indian Proceeding from Edla without invoking Section 1782, the first *Intel* factor does not support Zetwerk. *See In re Letter of Request from SPS Corp I*, C.A. No. 21-mc-565-CFC, 2022 WL 3908067, at *3 (D. Del. Aug. 30, 2022), *aff'd*, *SPS Corp I*, 110 F.4th 586 (3d Cir. 2024).

**16.** Zetwerk argues that the discovery is not available from Edla because "Edla deliberately deleted approximately 800 emails from his server right before his departure from employment at the various Zetwerk entities." (D.I. 4 at ¶ 20) But Zetwerk provides little context for this assertion. For instance, Zetwerk does not represent that Edla destroyed all communications in his possession, nor does it clarify whether the deleted emails may be recoverable from a backup server or by other means. Zetwerk provides no justification for seeking broad discovery from Ayr on "all documents" and "all communications" instead of tailoring its requests to the content Edla allegedly destroyed. (D.I. 27, Ex. 4) Consequently, the first *Intel* factor weighs against granting the Application.

**17.** ***Intel Factor 2.*** The court considers the second *Intel* factor to be neutral. Under this factor, the court analyzes "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government . . . to U.S. federal court judicial assistance." *In re O'Keeffe*, 646 F. App'x at 266. Zetwerk contends that the tribunal in India would be receptive to this court's assistance because India is a signatory to the Hague Convention. (D.I. 3 at 11-12) But India's status as a signatory to the Hague Convention is not, by itself, dispositive of this factor. *See In re Syngenta Crop Protection AG*, C.A. No. 21-mc-375-CFC, 2022 WL 1690832, at *2 (D. Del. May 26, 2022) (finding that the second *Intel* factor

8

did not "entirely favor[ ] granting the application" even where there was "no evidence suggesting that the Indian court would not be receptive to this Court's assistance").

18. The parties otherwise rely on competing declarations from attorneys in India in support of their arguments on the second *Intel* factor. The declaration submitted by Ayr states that India's Code of Civil Procedure "governs the process for seeking discovery in the [Indian Proceeding] and provides mechanisms to obtain documents from parties and non-parties[,]" and it cites specific code provisions that would allow Zetwerk to seek discovery from non-party Ayr in the Indian Proceeding. (D.I. 18 at ¶¶ 23, 28-35) The declaration submitted by Zetwerk concedes that "Indian civil procedure permits courts to summon documents" from third parties, but Zetwerk's declarant contends that this power is only discretionary and "offers little recourse" here for various reasons. (D.I. 21 at ¶¶ 28-30) Confronted with nothing more than competing attorney declarations, the court concludes that this factor is neutral.

19. *Intel Factor 3.* The court finds the third *Intel* factor, which "considers whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies," weighs slightly against Zetwerk. *In re Selman*, 2024 WL 1092025, at *8 (quoting *Intel Corp.*, 542 U.S. at 265 (internal quotation marks omitted)). Although Zetwerk is not required to exhaust all potential discovery procedures in the Indian Proceeding before seeking relief under Section 1782, efforts to "side-step[ ] less-than-favorable discovery rules by resorting immediately to [Section] 1782 can be a factor in the court's analysis." *Id.* (internal quotation marks and citation omitted).

20. Zetwerk contends that it is not trying to circumvent foreign proof-gathering restrictions, but rather it is invoking Section 1782 because it "has no means to seek this discovery in India against [Ayr] because it [is] not a party to the Indian Proceeding." (D.I. 3 at 12) In a subsequent declaration, however, Zetwerk acknowledges that the Indian tribunal has

9

discretionary authority to summon documents from third parties. (D.I. 21 at ¶ 28) Nonetheless, Zetwerk states only that "[t]he Indian proceedings are in a nascent stage and the Court-driven disclosure process has not yet started." (D.I. 27 at 1) Zetwerk does not identify any efforts it has made to request discovery from either Edla or Ayr in the Indian Proceeding. Although Zetwerk is not required to exhaust all discovery procedures in the foreign tribunal, a failure to seek any discovery, it must still attempt to seek discovery in India. *See Amazon.com, Inc. v. Nokia of Am. Corp.*, C.A. No. 24-493-GBW, 2025 WL 220301, at *6 (D. Del. Jan. 16, 2025) (explaining that, although a petitioner is not required to exhaust all potential discovery procedures, it must still attempt to seek discovery in the foreign tribunal).

**21.** Ayr points out that, in lieu of requesting discovery from Edla or Ayr in the Indian Proceeding, Zetwerk asked the court in India to appoint a receiver to seize confidential information belonging to Zetwerk "that is in [Edla's] possession, custody, or control, or any other person(s) acting on his behalf or on his instructions[.]" (D.I. 17 at 3; D.I. 4-2 at 20) Zetwerk never squarely addresses why the appointment of a receiver in India would be inadequate to capture the information it seeks from Ayr through the instant subpoena. If the Indian tribunal were to deny Zetwerk's motion for the appointment of a receiver, allowing substantially the same discovery against Ayr in this proceeding "would likely circumvent foreign proof-gathering restrictions because it would undercut the [Indian] court's decision." *SPS Corp I*, 110 F.4th at 594.

**22. *Intel Factor 4.*** The fourth and final *Intel* factor, regarding "whether the discovery sought is unduly intrusive or burdensome," weighs against Zetwerk. *Intel*, 542 U.S. at 265. This analysis "is virtually identical to the familiar 'overly burdensome' analysis that is integral" to the analysis under Rule 26 of the Federal Rules of Civil Procedure. *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85–86 (3d Cir. 2016). Zetwerk asserts that the seven

10

categories of document requests have been narrowed with specificity following a series of meet and confers. (D.I. 27 at 2-4) However, the scope of the revised requests remains overbroad and would therefore impose an undue burden on Ayr.

23. In the revised requests, Zetwerk defines "Zetwerk Confidential Information" as

> information that could be reasonably understood to belong to or have been sourced from Zetwerk, including: supplier lists, pricing lists, technical data, managing procurement, strategic growth opportunities (including materials relating to proposed acquisitions, including timing, due diligence, and materials discussing strategic interest), vendor and customer data, and business strategies.

(D.I. 27, Ex. 4 at 1) This definition requires Ayr, a non-party, to assess what information "could be reasonably understood to belong to or have been sourced from Zetwerk," and the subsequent list of examples includes broad and vague categories such as "business strategies." (*Id.*) Adding to the overbreadth of the revised requests are the preambles seeking "[a]ll communications" and "[a]ll documents" of a certain type. (D.I. 27, Ex. 4) Such requests are not narrowly tailored. *See In re Selman*, 2024 WL 1092025, at *9. The burden imposed by these overbroad requests is disproportionate to the needs of the case on the record before the court.

24. **Conclusion.** On balance, the discretionary *Intel* factors weigh against granting Zetwerk's Application. Consequently, IT IS ORDERED that Zetwerk's Application under 28 U.S.C. § 1782 is DENIED without prejudice.

25. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

26. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

_____
Sherry R. Fallon
United States Magistrate Judge